# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| **Norel Sterling Ward,**<br>    **Petitioner,** | )<br>)<br>) |
| **v.** | )  1:22cv381 (LMB/IDD) |
| **Director Harold Clarke,**<br>    **Respondent.** | )<br>)<br>)<br>) |

## MEMORANDUM OPINION

Norel Sterling Ward ("petitioner" or "Ward"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the constitutionality of his September 25, 2017 convictions in the Circuit Court of Henrico County, Virginia. The respondent has filed a Motion to Dismiss and Rule 5 Answer with supporting briefs and exhibits. [Dkt. Nos. 20–22], to which Ward has filed an opposition. [Dkt. No. 26, 27]. Accordingly, this matter is ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition dismissed with prejudice.

## I. Procedural History

On June 22, 2017, a jury found Ward guilty of two counts of possession of heroin with the intent to distribute in violation of Virginia Code § 18.2-248(C) and one count of conspiracy to distribute heroin in violation of Virginia Code § 18.2-248 and -256, [Dkt. No. 27-3] at 134–36, 43–45, and recommended his punishment to be 20 years in prison for each distribution offense and 25 years in prison for the conspiracy conviction. On September 25, 2017, the circuit court entered a judgment sentencing Ward to 45 years in prison, as the sentence of 20 years for each possession charge was to run concurrently. Id. at 143–45.

Ward, by counsel, appealed his convictions to the Court of Appeals, and, as paraphrased by the respondent, raised the following assignments of error:

> I. The trial court erred by denying his motion to suppress evidence from a May 6, 2015 traffic stop because the stop and his subsequent detention were unreasonable and violated his Fourth Amendment rights due to the length of the stop for a traffic violation.
>
> II. The trial court erred by denying his motion to suppress his statements obtained following his arrest on July 6, 2016 during a "cigarette break" because the statements were obtained while he was in custody and without clear evidence of him being given Miranda warnings, pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), prior to questioning.
>
> III. The trial court erred by denying his motion to strike the evidence and affirming the jury's verdict of guilt for possession with the intent to distribute heroin on May 6, 2015, because the chain of custody of the drugs allegedly seized from him was broken by the evidence that a non-testifying person named "Thomas Parker" submitted the envelope to the forensics lab.
>
> IV. The trial court erred by denying his motion to strike the evidence and affirming the jury's verdict of guilt for possession with the intent to distribute heroin on May 6, 2015, because the evidence was insufficient to prove that he possessed the bags of heroin that were found on the ground.
>
> V. The trial court erred by denying his motion to strike and affirming the jury's verdict of guilty on the conspiracy charge because there was insufficient evidence to prove actual exchanges of drugs and money during the surveillance conducted by the police on the dates alleged. Specifically, the testimony of the co-conspirators, Minns, Crozier, Bailey and James, was not credible because they were convicted felons and were seeking leniency in return for their testimony.
>
> VI. The trial court erred by denying his motion to strike and affirming the jury's verdict by finding sufficient evidence of guilt as to the charge of possession of heroin with the intent to distribute on June 29, 2016, because there was insufficient evidence to prove that he purchased heroin from Bailey on that date due to Bailey's lack of credibility as a witness.

[Dkt. No. 22] at 1–2. The Court of Appeals affirmed the judgment of the trial court in an order dated September 4, 2018. [Dkt. No. 22-2] at 1–18. Again by counsel, Ward filed a petition for appeal in the Supreme Court of Virginia raising the same six assertions of error. [Dkt. No. 25] at 9–11. The court refused his petition on May 21, 2019. Id. at 41.

More than one year after the Supreme Court of Virginia refused his direct appeal petition, Ward, acting pro se, filed a petition for writ of habeas corpus by placing it in the prison mail system on May 27, 2020. Id. at 71; [Dkt. No. 25-5] at 12–13. In that petition, he alleged that trial counsel was ineffective for failing to object to the indictments on the basis that there was no order in the order book at the time of his criminal trial reflecting that the indictments had been presented in open court, which he argued rendered his convictions void. [Dkt. No. 25] at 48–49. By order dated May 19, 2021, the Supreme Court of Virginia dismissed Ward's habeas petition as untimely filed because it was filed more than one year after his direct appeals terminated. [Dkt. No. 25-5] at 12–13. The court also ruled that that "to the extent petitioner seeks to avoid the limitations period by alleging his convictions are void because the indictments were not returned in open court and recorded in the circuit court's order book, such defects, if any, are not jurisdictional. Epps v. Commonwealth, 293 Va. 403, 409 (2017)." Id. at 13. On October 8, 2021, the court found Ward's "petition for rehearing was not timely filed," and dismissed the "petition as late." Id. at 14–22, 25.

## II. Federal Petition

On January 12, 2022, Ward, proceeding pro se, executed a federal habeas corpus petition, pursuant to 28 U.S.C. § 2254, which was filed in the United States District Court for the Western District of Virginia on February 16, 2022, and then transferred to this district on February 18, 2022, where it was docketed as Ward v. Clarke, No. 1:22cv381-LMB-JFA (E.D. Va.) [Dkt. Nos. 1, 3]. By order dated February 23, 2022, this Court directed Ward to file an amended habeas petition because the original habeas petition did not comply with the Court's local rules. Id. at [Dkt. No. 5].

3

On February 13, 2022, a month after signing his first federal habeas petition, Ward signed a second petition pursuant to 28 U.S.C. § 2254, which was filed in the United States District Court for the Western District of Virginia on February 18, 2022, [Dkt. No. 1], and transferred to this district, where it was docketed as 1:22cv381, [Dkt. No. 2].

On May 4, 2022, the Court reviewed both habeas petitions and found that the single claim Ward had raised in 1:22cv181 was repeated verbatim in 1:22cv381 as Claim 1 along with three other claims. Ward v. Clarke, No. 1:22cv381-LMB-JFA (E.D. Va.) [Dkt. No. 8]. As a result, the Court dismissed 1:22cv181 without prejudice because Ward's second petition duplicated its only claim, finding there was "no need or benefit to petitioner for both civil actions to go forward and allowing petitioner to pursue duplicate petitions would create confusion and inefficiency." Id. Ward made minor amendments to the petition on May 19, 2022. [Dkt. No. 6]. The amended petition raises the following four claims:

> [1.] Ineffective assistance of counsel . . . . The content of an appeal is heavily controlled by counsel [and] is not likely to be raised at [t]rial and or to appear among the assignment of constitutional error on appeal. . . .
>
> [2.] The validity of an indictment is that it must be publicly delivered in open court and the fact be recorded. . . .
>
> [3.] Miranda warning was not read to Petitioner on May 6, 2015 illegal traffic stop Exit 118B Fontaine Ave Charlottesville. . . .
>
> [4.] Forensic laboratory analysis chain of custody of evidence, two people stated they was [sic] the ones [who] submitted the evidence. . . .

[Dkt. No. 6] at 5–6, 8–9.

### III. Statute of Limitations

Respondent correctly argues that Ward's petition is time-barred by the applicable statute of limitations, 28 U.S.C. § 2244(d), which bars the claims presented in Ward's federal habeas petition. A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed;

4

(3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D).

Relevant here, under 28 U.S.C. § 2244(d)(1)(A) and (d)(2), the one-year period in which to file a federal habeas corpus petition begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Id. The Supreme Court of Virginia refused Ward's petition for appeal on May 21, 2019, which means that his convictions became final on August 19, 2019, 90 days after the Supreme Court of Virginia denied his petition for appeal.[1] One year from that date is August 19, 2020. In calculating the one-year period, however, the Court must exclude the time during which petitioner's properly filed state collateral proceeding was pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (explaining that definition of "properly filed" state collateral proceedings is based on the applicable state law as interpreted by state courts).

Giving Ward the most charitable date, the Court will use January 12, 2022, the date Ward signed the federal petition filed in 1:22cv181, as the earliest date on which he filed his habeas petition in federal court. See Houston v. Lack, 487 U.S. 266, 276 (1988). Even with that charitable finding, the federal petition, at best, was filed 511 days after the statute of limitations had elapsed. Thus, Ward's federal petition is barred from federal review, unless statutory or

---

[1] Absent one of the statutory exceptions, "the one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing 28 U.S.C. § 2244(d)(1)(A)). The direct review of a state court conviction is complete "when the period for filing a petition for a writ of certiorari in the United States Supreme Court expire[s]." Id. "If no petition for a writ of certiorari is filed in the United States Supreme Court, then the [federal habeas] limitation period begins running when the time for doing so — 90 days — has elapsed." Id.

5

equitable tolling applies. See Pace, 544 U.S. at 411–12; Harris v. Hutchinson, 209 F.3d 325, 327–28 (4th Cir. 2000).

*A. Statutory Tolling*

The Supreme Court of Virginia found that Ward filed his state habeas petition on May 27, 2020 because "[t]he envelope in which the petition was mailed bears an institutional stamp indicating it was received by the mail room at Red Onion State Prison on May 27, 2020, after the limitations period expired." [Dkt. No. 25-5] at 12–13; [Dkt. No. 25] at 108. Based on that filing date, May 21, 2021, the court procedurally dismissed Ward's state habeas petition as untimely after finding that it was filed on May 27, 2020, six days past the May 21, 2020 deadline.[2] As the court explained, the petition was untimely under Virginia Code § 8.01-654(A)(2) which requires that habeas challenges to a noncapital conviction be filed "within two years from the date of final judgment or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." [Dkt. No. 22-5] at 12–13. Ward's petition for rehearing was also found to be not "properly filed" because it was also filed late and was dismissed on those grounds on October 8, 2021. Id. at 25. Neither the petition nor the petition for rehearing tolled the federal statute of limitations because neither was properly filed. See Pace, 544 U.S. at 417 (finding petitioner not entitled to statutory tolling when his state habeas petition was dismissed as untimely); Artuz v. Bennett, 531 U.S. 4, 8 (2000) (explaining that a state collateral proceeding is not "properly filed" if it is filed untimely).

Even if the Court assumed that Ward's state habeas petition was filed on May 20, 2020, the date he executed it, which would have been within the state statute of limitations, the federal petition remains untimely because Ward's direct appeal became final on August 19, 2019, and by

---

[2] On direct appeal, the Supreme Court of Virginia refused Ward's petition on May 21, 2019, which means he had until May 21, 2020 in which to file his state habeas petition.

6

May 20, 2020, when Ward signed his state petition, 275 days of the federal limitations period had elapsed, leaving Ward with only 91 days in which to file a federal habeas petition in federal court after his state habeas proceedings concluded on October 8, 2021, when his untimely petition for rehearing was denied. To meet the federal one-year deadline, Ward needed to file his federal petition by January 7, 2022; however, the federal petition was not filed until January 12, 2022, the day Ward signed the petition filed in 1:22cv181. Accordingly, statutory tolling does not save Ward's federal habeas petition, and even if statutory tolling did apply, the federal petition was filed too late.

### B. Equitable Tolling

The doctrine of equitable tolling allows a habeas petitioner to file a federal habeas petition out of time if he can establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" preventing a timely filing. See Holland v. Florida, 560 U.S. 631, 649 (2010) (citation omitted). A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test, and generally must specify the steps he took in diligently pursuing his federal claim. Yang v. Archuleta, 525 F.3d 925, 928, 930 (10th Cir. 2008) (citation omitted); see also Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). A petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (citation omitted). It is widely recognized that equitable tolling is to be applied only infrequently. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) ("Equitable tolling is 'appropriate when, but only when, "extraordinary circumstances

beyond [the petitioner's] control prevented him from complying with the statutory time limit.""'") (alteration in original) (citation omitted).

In his response to the motion to dismiss, Ward does not address the timeliness issues raised in the motion. Instead, he repeats and reargues his merits claims including the lack of jurisdiction argument that the Supreme Court of Virginia rejected in state habeas proceedings; that his statements should have been suppressed; that the stop of his car was illegal; that the prosecution did not prove chain of custody of the drugs; and that counsel was ineffective for not investigating the defective indictment and failing to raise the issue that the trial court lacked subject matter jurisdiction. [Dkt. No. 26].³ None of Ward's responses provide any indication of extraordinary circumstance that prevented him from timely filing his federal petition. Moreover, Ward's lack of knowledge of the law is not the type of extraordinary circumstance that justifies equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (finding that pro se petitioner's ignorance and misconceptions about the operation of the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond his control); Rouse, 339 F.3d at 248–49 (holding that a party's counsel's incorrect interpretation of the statute of limitations did not present extraordinary circumstances to warrant equitable tolling). For these reasons, Ward's federal habeas petition must be dismissed as time-barred.⁴

---

³ Ward has filed a motion to amend his response seeking to add pages 80, 107, and 108 from the February 10, 2017 transcript of the hearing addressing his motion to suppress the allegedly illegal stop. [Dkt. No. 28]. The February 10, 2017 transcript is part of the record before the Court, and it has been reviewed (including the three pages Ward seeks to add to his response). [Dkt. No. 27] at 247, 274–75. Therefore, Ward's motion will be denied as moot.

⁴ The Supreme Court's decision in Martinez v. Ryan, 566 U.S. 1 (2012) is not applicable in Ward's petition because it does not toll the statute of limitations. "The decision in Martinez fails to provide any basis for avoiding the statute of limitations set forth in 28 U.S.C. § 2244(d)." Hill v. Clarke, No. 3:12cv174, 2014 WL 6388431, at 11 n.12 (E.D. Va. Nov. 14, 2014) (citing Lambrix v. Sec'y, Fla. Dep't Corr., 756 F.3d 1246, 1262 (11th Cir. 2014)); see also Wilson v. Perry, No. 1:14CV576, 2014 U.S. Dist. LEXIS 131561, at *3 (M.D.N.C. Sept. 19, 2014)

### IV. Exhaustion and Procedural Default

Even if the petition had been timely filed, it would have to be dismissed because Ward's claims are either defaulted or meritless. A state prisoner must exhaust his remedies in state court before seeking habeas corpus relief in federal court. 28 U.S.C. § 2254(b). The exhaustion doctrine gives "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied by a finding that the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citations omitted)). This means that both the same arguments and factual support raised in the petitioner's § 2254 application must have been presented to the Supreme Court of Virginia either on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)); see also Bassett v. Thompson, 915 F.2d 932, 936–37 (4th Cir. 1990) (holding that an unexhausted claim, which would be held defaulted if the petitioner were to return to state court, is deemed simultaneously exhausted and defaulted for purposes of federal habeas review). Ward's nearly incomprehensible

---

("Martinez and Trevino [v. Thaler, 569 U.S. 413 (2013)] each addressed whether a procedural bar, rather than a time bar, should apply to an ineffective assistance of counsel claim from a state habeas proceeding. Thus, Martinez and Trevino are inapplicable to the determination of untimeliness under the AEDPA one-year statute of limitations."), appeal dismissed, 588 F. App'x 216 (4th Cir. 2014).

9

Claim 1, which consists of the following allegation, "[t]he content of an appeal is heavily controlled by counsel [and] is not likely to be raised at trial and or to appear among the assignment of constitutional error on appeal," was not raised in state court. [Dkt. No. 6] at 5.[5] If Ward returned to state court to raise Claim 1, it would be deemed barred by the state statute of limitations, Virginia Code § 8.01-654(A)(2).[6] A petitioner may only overcome a state default by establishing cause and prejudice or a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); McNeil v. Polk, 476 F.3d 206, 211 (4th Cir. 2007). To establish "prejudice" a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982)(emphasis omitted). A fundamental miscarriage of justice is a narrow exception to the cause requirement, "where a constitutional violation has probably resulted in the conviction of one who is 'actually innocent' of the substantive offense." Richmond v. Polk, 375 F.3d 309, 323 (4th Cir. 2004) (citing Dretke v. Haley, 541 U.S. 386 (2004)). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

---

[5] The Fourth Circuit recently held that a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); Frey v. Schuetzle, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

[6] Virginia Code § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim. See Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 588 (E.D. Va. 2006); see, e.g., Baker v. Clarke, 95 F. Supp. 3d 913, 917–18 (E.D. Va. 2015) ("[M]any courts have held, Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law procedural rule, as it is a statutory rule that is not tied to the federal Constitution.") (citation omitted).

To the extent Claim 1 is construed as an ineffective assistance of appellate counsel claim, it does not clearly identify an issue that counsel failed to raise on appeal. "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal," a petitioner must "normally demonstrate" both deficient performance—"that his 'counsel's representation fell below an objective standard of reasonableness' in light of the prevailing professional norms,"—and prejudice, meaning "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). "Whether counsel's performance was constitutionally adequate is a mixed question of law and fact which we review de novo." Savino v. Murray, 82 F.3d 593, 598 (4th Cir. 1996).

"In deciding which issues to raise on appeal, [counsel] is entitled to a presumption that he decided which issues were most likely to afford relief." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008) (citing Bell, 236 F.3d at 164). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (citing Jones v. Barnes, 463 U.S. 745, 751–52 (1983)) (explaining that decisions regarding what claims to raise on appeal are matters left to the discretion of appellate counsel). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not

11

raised on direct appeal . . . with the strength of arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018) (citing United States v. Mason, 774 F.3d 824, 828–29 (4th Cir. 2014)). In conducting that comparison, the court "focus[es] on the reasonableness of appellate counsel's conduct viewed as of the time of the conduct." Id. (citing Strickland, 466 U.S. at 690).

Ward's conclusory allegation fails to identify any alleged error that counsel failed to raise on direct appeal, much less an alleged error that was "significant and obvious" and likely to succeed, or that the errors alleged were "clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 2000)). In his state habeas petition Ward alleged that his appellate attorney was ineffective for not arguing that Ward "was not properly indicted because the indictments against him were not presented in open court and the fact recorded in the court's order book." [Dkt. No. 25-5] at 12. Ward mentions that issue in his current response to the motion to dismiss and asserts counsel's failure rendered his convictions void. To the extent that Claim 1 tries to allege that appellate counsel was ineffective for not raising the indictment issue, his claim fails because that argument is meritless. As another judge in this district has observed,

> the Supreme Court of Virginia has addressed the very alleged defect that [petitioner] raised in his motion to vacate and held that "the statutory requirement for an indictment . . . is not jurisdictional, the failure of the record to show affirmatively that the indictment was returned into court by the grand jury is not such a defect as will render null and void the judgment of conviction based thereon.

Lewis v. Clarke, No. 1:20cv282, 2020 U.S. Dist. LEXIS 194530, *18–19 (E.D. Va. Oct. 19, 2020), appeal dismissed, 853 F. App'x 914 (4th Cir. 2021) (quoting Epps v. Commonwealth, 799 S.E.2d 516, 519 (2017). An appellate attorney's failure to raise a claim that has no merit as a matter of law does not support a claim of ineffective assistance of appellate counsel. For all these

12

reasons, in addition to being time-barred, Claim 1 also fails on the merits, and will therefore, be dismissed.

## V. Standard of Review for Claims 2–4

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "State court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

An unreasonable application of federal law is not the same as an incorrect application. Under AEDPA the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772–73 (2010). "[E]ven 'clear error' will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)). This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (2010) (citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295,

299 (4th Cir. 2006). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting (quoting Yarborough v. Alvarado, 541 U.S. 652 (2004)). This highly deferential standard is "difficult to meet," and governs this Court's review of all legal determinations made on the merits by state habeas courts. Id. at 102.

Further, § 2254(d)(1), "requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time—i.e., the record before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011).

*A. Claim 2*

In Claim 2, Ward alleges that to be valid "an indictment . . . must be public[ly] delivered in open court and the fact be recorded" and contends that this alleged error rendered his conviction void for lack of subject matter jurisdiction. [Dkt. No. 6] at 6; [Dkt. No. 26] at 1–6. As previously discussed, the Supreme Court of Virginia rejected this very argument in dismissing the state habeas petition, citing Epps, 799 S.E.2d 516, 519 (Va. 2017). [Dkt. No. 25-5] at 13. Epps observed that the argument Ward advances was based upon cases from the 1880s and "the lack of a recording of the indictment did not render the indictment, or trial thereon, void" under subsequently enacted statutes. 799 S.E.2d at 519. Epps further explained that because the statutory requirement for an indictment under the subsequently enacted statutes was "not jurisdictional, the failure of the record to show affirmatively that the indictment was returned into court by the grand jury is not such a defect as will render null and void the judgment of conviction based thereon." Id. (quoting Hanson v. Smyth, 32 S.E.2d 142, 144 (Va. 1944)). As

14

such, Claim 2 presents an alleged error of state law, which means it is not cognizable in federal habeas. See Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) ("[E]ven if we were to conclude after an independent review that the state court's holding was incorrect, we are nevertheless bound by it as a final determination of state law by the highest court of the state") (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)). For all these reasons, in addition to being time-barred, Claim 2 lacks merit, and will therefore be dismissed.

### B. Claim 3

In Claim 3 Ward asserts that he was illegally stopped on May 6, 2015, that he was not read his Miranda rights on July 6, 2016, and that the trial court erred in denying his motions to suppress. [Dkt. No. 6] at 8.[7] Ward raised both issues on direct appeal. The Court of Appeals of Virginia addressed and rejected these assertions of error in detail. [Dkt. No. 22-2] at 1–18. Ward raised the same assertions of error in his petition for appeal to the Supreme Court of Virginia, which refused the petition in a summary order. [Dkt. No. 25] at 41; see Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (explaining that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

In affirming the trial court's denial of Ward's motion to suppress, the Court of Appeals recounted the details of the joint task force investigation that began in 2013 and the surveillance that was undertaken before the traffic stop. [Dkt. No. 22-2] at 2–4. The court held that the stop for a defective taillight was neither pretextual nor prolonged to allow the canine to arrive. Id. at 9–10. In addition, the court found that the officer "had an independent reasonable suspicion that

---

[7] Ward clarified in his response to the motion to dismiss that he was also alleging he had not been read his Miranda rights before he gave a statement on July 6, 2016. [Dkt. No. 26] at 6–7.

[Ward] would be in possession of drugs" at the time of the stop based upon the surveillance of Ward and others earlier that day, enroute to Albemarle, and previous surveillance of Ward and others involved in the conspiracy. Id.

Fourth Amendment claims are not cognizable in federal habeas under Stone v. Powell, 428 U.S. 465 (1976), which holds that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494 (footnote omitted); see, e.g., Boggs v. Bair, 892 F.2d 1193, 1200 (4th Cir. 1989) (finding that petitioner had a full and fair opportunity to litigate the search of his vehicle and his subsequent statements were not fruit of the poisonous tree).

When faced with Fourth Amendment claims in a habeas proceeding, a district court should "first inquire as to whether or not the petitioner was afforded an [o]pportunity to raise his Fourth Amendment claims under the then existing state practice." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978). The record establishes that Virginia procedures provided Ward with a means to raise Fourth Amendment claims at trial and on appeal, and that in fact he did so. Ward's counsel filed a motion to suppress alleging a Fourth Amendment violation, and the circuit court held an evidentiary hearing on the motion and denied Ward's motion. Ward properly raised a Fourth Amendment claim on appeal, and the Virginia appellate courts denied that portion of his appeal on the merits. For these reasons, this portion of Claim 3 lacks merit.

In his other suppression motion, Ward alleged that his statements on July 6, 2016 should have been suppressed because he was not read his Miranda rights before he made the statements. The record shows that after his arrest on July 6, 2016, Ward was taken to an interview room and then escorted outside by Detective Mark Jones so that Ward could smoke a cigarette. [Dkt. No.

16

22-2] at 10–11. While outside, Jones told Ward that if he wanted to talk about the case, Jones would have to read him his Miranda rights. Id. Jones read Ward his rights, Ward stated he understood them, and the two then discussed items seized from Ward's residence pursuant to search warrants and Ward made other incriminating statements. Id. After Ward finished his cigarette, the two went back to the interview room and the interview was recorded on video. Id. Ward executed a Miranda advisement of rights form in the interview during which Jones is heard on the video recording telling Ward this is just "like what he had done 'outside.'" Id. at 11. The trial judge denied the motion to suppress finding Jones' testimony was credible and that Jones had advised Ward of his Miranda rights while the two were outside. Id. at 11–12. The Court of Appeals found that the evidence supported the trial court's finding and observed that once Ward invoked his right to counsel the interview was "immediately" terminated. Id. at 12.

The Court of Appeals decision affirming the trial court's denial of Ward's motion to suppress the evidence recovered during the traffic stop was not contrary to, and did not involve an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d). For these reasons, in addition to being time-barred, all the claims in Claim 3 are meritless. Therefore, Claim 3 will be dismissed.

Claim 4 asserts that there were errors in the "[f]orensic laboratory analysis chain of custody of evidence," based on Ward's allegation that "two people stated they was [sic] the ones [who] submitted the evidence." [Dkt. No. 6] at 9–10. Ward raised this issue on direct appeal in his third assignment of error. [Dkt. No. 22-2] at 24. On review, the state court rejected that claim, finding that the chain of custody had been established and affirmed Ward's conviction:

> At trial, Coffin testified consistently with his testimony at the suppression hearing regarding the circumstances of his involvement with the traffic stop of James'

17

> Buick on May 6, 2015. Coffin stated that after he found the white paper towel and two plastic bags of suspected heroin that appellant threw during the traffic stop, he sealed the suspected drugs in an evidence envelope marked with the date and his name.
>
> Deborah Clay Brimijoin, a scientist from the Department of Forensic Science, testified that she tested the two bags of suspected heroin and determined that they both contained heroin, weighing 17.31 grams. The certificate of analysis indicated that she received the evidence envelope from "Thomas Parker," though she had documentation that T. Coffin was the investigating officer. Brimijoin testified that the envelope was sealed when she received it. . . .
>
> Coffin testified he sealed the evidence envelope containing the heroin, marking it with the date and his name. Brimijoin testified that the envelope was still in its sealed condition when she received it. The record does not demonstrate that the evidence envelope had been unsealed, disturbed, altered, contaminated, or otherwise tampered with, between the time Coffin sealed the envelope and when Brimijoin unsealed it for testing. This evidence established with reasonable assurance that what Coffin seized and placed in the envelope were the same items, and in the same condition, as what Brimijoin tested. The possibility that someone else, namely "Thomas Parker," handled the envelope went to the weight of the evidence, not its admissibility. Accordingly, the trial court did not err by denying appellant's motion to strike based on a break in the chain of custody.

[Dkt. No. 22-2] at 12–14. Ward's claim that the chain of custody was not sufficiently established is a state law evidentiary claim, not a claim under the United States Constitution. Under 28 U.S.C. § 2254(a), "it is not the province of a federal habeas court to reexamine state court determinations on state-law questions." Estelle, 502 U.S. at 67–68; see, e.g., Jenkins v. Bara, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) ("Decisions concerning the foundation that must be laid for the chain of custody of a substance offered into evidence . . . [are] well within the sound discretion of the state trial judge, and a federal district court should not exercise supervisory review over such decisions."). Accordingly, because Claim 4 is both time-barred and fails to state a claim upon which relief can be granted it will be dismissed.

## VI. Conclusion

For the reasons discussed above, respondent's Motion to Dismiss [Dkt. No. 20] will be granted, Ward's motion to amend [Dkt. No. 28] will be dismissed as moot, and this petition will be dismissed with prejudice by an order to be issued with this Memorandum Opinion.

Entered this 22ND day of June 2023.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge